UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00220-FDW

| | | |
|---|---|---|
| ROBERT E. WOODWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALAN CLONINGER, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on the following:

(1) Defendant Kim LNU's Motion for Summary Judgment [Doc. 14];

(2) Plaintiff's Pro Se Motion to Obtain Correct Identities of Both Unknown Nurses [Doc. 24];

(3) Defendant Kim LNU's Motion to Strike Plaintiff's Surreply to Defendant LNU's Motion for Summary Judgment [Doc. 25];

(4) Defendant Cloninger and Nolen's Motion for Summary Judgment [Doc. 27]; and

(5) Plaintiff's Pro Se Motion to Amend/Correct Complaint [Doc. 30].

I. **BACKGROUND**

A. **Procedural Background**

Pro se Plaintiff Robert E. Woodward is a North Carolina inmate incarcerated at Alexander Correctional Institution in Taylorsville, North Carolina. Plaintiff filed this action on April 26, 2018, pursuant to 42 U.S.C. § 1983. Plaintiff named the following individuals as Defendants: (1) Alan Cloninger[1], Sheriff of Gaston County; (2) Kim LNU ("Defendant Kim"), identified as the

---
[1] The Plaintiff named Defendant Alan Cloninger as Alan "Clonniger." It is evident from the filings in this case that his last name is Cloninger and the Court refers to him as such.

"Head Nurse Kim" at Gaston County Detention Center; (3) Jane Doe, identified as a nurse at the Gaston County Detention Center; and (4) FNU Nolen, an officer at the Gaston County Detention Center. Plaintiff brought an Eighth Amendment claim against Defendants for deliberate indifference to serious medical needs based on Defendants' refusal to provide him with proper medical care of his diabetes-related foot conditions while he was a pre-trial detainee at the Gaston County Detention Center (the "jail"). Plaintiff seeks compensatory and punitive damages.

On January 7, 2019, Defendant Kim moved for summary judgment. [Doc. 14]. In support of her motion, Defendant Kim filed a memorandum in support, an Affidavit of Bruce Flitt, DO, the Medical Director at the jail, and an Offender Information Report for the Plaintiff. [Docs. 14-1, 14-2]. Defendant Kim moves for summary judgment because she was misidentified by the Plaintiff. Although she was a nurse at the jail during the general time frame at issue, she was not on duty at the relevant times and had no interactions with the Plaintiff. The Plaintiff filed a response. [Doc. 20]. In his response, the Plaintiff apologizes to Defendant Kim for incorrectly identifying her and requests that summary judgment be granted for her. The Plaintiff also responds point-by-point to Defendant Kim's memorandum in support of summary judgment and to the Affidavit of Bruce Flitt, DO. [See Doc. 20]. The Plaintiff, however, submitted no affidavit or any other statements made under penalty of perjury. Defendant Kim replied [Doc. 22] and the Plaintiff filed a surreply [Doc. 23]. Defendant Kim moved to strike the Plaintiff's surreply as unauthorized. [Doc. 25].

On February 8, 2019, after learning that Defendant Kim was not on duty at the relevant times, Plaintiff moved to conduct discovery to obtain the identities of "both nurses" who were present in the medical unit on March 7, 2018. [Doc. 24]. On February 25, 2019, Defendants Cloninger and Nolen moved for summary judgment. [Doc. 27]. In support of their motion,

Defendants Cloninger and Nolen filed a memorandum, an Affidavit of Sheriff Alan Cloninger, and a letter from the Plaintiff dated March 8 and 11, 2018. [Docs. 27-2, 27-4, 29]. These Defendants also stated that they would provide video footage of the Plaintiff in the jail and at the medical area on March 7, 2018, on the Court's request. [Doc. 27-1]. Then, on February 26, 2019, the Plaintiff moved to amend his complaint to "'correctly' name 'both nurses' that violated [his] constitutional rights on the morning in question." [Doc. 30].

On March 5, 2019, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 31]. The Plaintiff was specifically advised that if he had any evidence to offer to show that there is a genuine issue for trial, he must present it to the Court "in a form which would otherwise be admissible at trial, i.e., in the form of affidavits or unsworn declarations." The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Doc. 31]. The Plaintiff filed a 16-page handwritten response to Defendant's summary judgment motion. [Doc. 32]. The Plaintiff, however, submitted no affidavits or other evidence "in a form which would otherwise be admissible at trial."

### B. Factual Background

#### 1. Plaintiff's Allegations

Plaintiff did not respond to either summary judgment before the Court with evidence in the form of an affidavit or that is otherwise admissible at trial. As such, the Court has before it only

3

the Plaintiff's original allegations, which are as follows.

Plaintiff went to the jail on December 4, 2017 for one night. While there, he developed blisters on his toes, which turned into diabetic ulcers. He then got cellulitis and endured months of pain. Plaintiff wrote Sheriff Cloninger on December 6, 2017 and requested that he change his policy that prevented diabetics from keeping their personal shoes. When Plaintiff returned to the jail on March 5, 2018, the policy had not changed. Plaintiff was forced to wear the exact same shoes that caused his problems in December.

On the evening of March 6, 2018, the Plaintiff's toes "busted open once again." The Plaintiff went to medical the following morning to check his blood sugar and to get some band-aids. He "tried to declare a medical emergency." The head nurse, who Plaintiff named in his Complaint as "Head Nurse Kim," was in earshot of his conversation with another nurse, who the Plaintiff named in his Complaint as Jane Doe, and would not come look at Plaintiff's toes. Plaintiff explained to Nurse Jane Doe that he had court that morning and needed to get his toes dressed or bandaged because he had a lot of walking to do. Nurse Doe and Officer Nolen "got mad" at Plaintiff for asking for this care. Officer Nolen threatened to mace the Plaintiff if he did not "got out of her sight." Plaintiff was sitting in the medical area with "'opened up' toes and 'blood soaked' socks" and neither Nurse Doe nor the head nurse would give him a band-aid. [Doc. 1 at 5-8].

### 2. Defendants' Forecast of Evidence

At all relevant times, Defendant Cloninger was the duly elected Sheriff of Gaston County. [Doc. 27-2 at ¶ 1: Affidavit of Sheriff Alan Cloninger]. Defendant Cloninger oversees Gaston County Jail. [Id. at ¶ 2]. Bruce Flitt, D.O., is a medical doctor who contracts with the jail to provide necessary medical services to inmates. [Id. at ¶ 3]. Dr. Flitt sets medical policy and

oversees medical staff and protocol. [Id.]. Medical staff at the jail are not employees of the Sheriff. [Id. at ¶ 4].

Plaintiff was brought from prison to the jail on December 4, 2017 for a court appearance. Plaintiff went through jail intake. [Id.] During the intake, pursuant to jail custom, practice, and policy, Plaintiff was asked general questions about his medical condition and was referred for medical screening. [Id. at 7]. Pursuant to jail policy, the Plaintiff's personal property and clothing were confiscated, and he was given standard issue clothing, including sandals commonly called "slides" or "shower shoes." [Doc. 27-2 at ¶ 8; Doc. 14-1 at ¶ 8]. This policy exists for safety and security within the jail. [Id.].

Plaintiff's medical screening, care and treatment, and medical concerns were handled by Dr. Flitt and his employees. [Id. at ¶ 6]. At his medical screening, Plaintiff advised his screener that he has diabetes and high blood pressure, but he did not advise the screener that he had old wounds on his toes or that he required special shoes. [Doc. 14-1 at ¶ 7]. A jail identification (ID) bracelet was issued, and Plaintiff was instructed to wear it at all times. All inmates must where their ID bracelet to receive medical care. [Doc. 27-2 at ¶ 7; Doc.14-1 at ¶¶ 7, 16]. This policy is intended to prevent confusion and to allow medical staff to properly identify each patient. [Doc. 14-1 at ¶ 17].

At approximately 11 p.m. on December 4, 2017, Plaintiff was seen in the medical facility with a burst blister on the bottom of his right toe, which was treated and dressed. [Doc. 14-1 at ¶ 9]. Plaintiff left the jail the next day. [Id. at ¶ 10].

On March 5, 2018, Plaintiff returned to the jail for another court appearance. [Doc. 27-2 at ¶ 9]. He again went through the standard intake and was issued standard footwear. [Id.]. The Plaintiff was again referred for medical screening, which was conducted at 5:21 p.m. [Id.; Doc.

5

14-1 at ¶ 11]. Plaintiff asked for no immediate medical care, did not report any injury to his toes, and requested no special shoes or other medical equipment. [Doc. 14-1 at ¶ 11]. Further, Defendant Cloninger is not aware of any request for special shoe consideration during intake. [Doc. 27-2 at ¶ 9]. Plaintiff was provided an ID bracelet and again instructed to wear it at all times. [Doc. 14-1 at ¶ 11]. Plaintiff was told how to obtain medical treatment by filling out a sick call request form, turning it in, and then presenting for treatment. He indicated he understood the process. [Doc. 14-1 at ¶ 11]. These instructions were in accordance with medical policy at the jail. This policy provides order for the medical staff, jail staff, and inmates in determining medical needs. [Doc. 14-1 at ¶ 18].

All inmates who require insulin for diabetes, which included the Plaintiff, are called to report to the medical facility twice a day, around 5:30 a.m. and 5:30 p.m. Blood sugar levels are checked, and insulin is given. [Doc. 14-1 at ¶ 12]. On the evening of March 5, 2019, Plaintiff refused to present for the evening check. As a result, he was brought to the medical area around 7:30 p.m. for counseling regarding his diabetic condition. [Doc. 14-1 at ¶ 13]. On March 6, 2018, Plaintiff refused his morning insulin. He complied with the evening blood sugar check and insulin administration. He had no complaints at this time. [Doc. 14-1 at ¶ 14].

On March 7, 2018, Plaintiff was called to report to the medical area at approximately 5:30 a.m. for a blood sugar check. He came to the medical area around 6 a.m. and refused insulin. Plaintiff did, however, demand a band-aid. Plaintiff was not wearing his ID bracelet and, consequently, could not be given medical care. [Doc. 14-1 at ¶ 15]. Nurse Doe asked the Plaintiff to get his ID bracelet. The Plaintiff refused. [Doc. 14-1 at ¶ 16]. Defendant Nolen witnessed and documented this event. [Doc. 27-2 at ¶ 12]. Medical policy at the jail dictates that band-aids are not issued without evaluation and assessment. [Doc. 14-1 at ¶ 16]. The reasons for this policy

include to prevent inmates from covering up wounds that require treatment and to prevent inmates from hiding contraband under a band-aid. Medical staff is required to assess, clean, treat, and properly dress all wounds. [Doc. 14-1 at ¶ 16].

Defendant Nolen was, at all relevant times, employed by Defendant Cloninger as a detention officer at the jail. [See id. at ¶ 11]. Defendant Nolen was assigned to the medical area, including the nurses' station, on March 7, 2018. [Id. at ¶ 11]. Defendant Nolen's duties included providing safety and security in the area and for medical staff. Defendant Nolen has the authority to use reasonably necessary force to obtain compliance by an inmate, to restore or maintain discipline and peace, and to prevent disturbance should it become necessary. [Id.].

In his Affidavit, Defendant Cloninger references video footage of the medical area on the morning of March 7 and attests that, in the footage, Plaintiff does not appear to be in medical distress and is not wearing his ID bracelet as required by jail policy. [Id. at ¶ 16]. Plaintiff was in the medical area that morning for approximately two minutes. [Id. at ¶ 17]. As evidenced by the video footage, there was no confrontation with Defendant Nolen. Officer Nolen did not approach the Plaintiff, touch her pepper spray, or take an aggressive stance with the Plaintiff. [Id. at ¶ 17]. In fact, Defendant Nolen was on the other side of the nurses' station from the Plaintiff and Plaintiff's back was to Defendant Nolen during most of the Plaintiff's time in the medical area. After the Plaintiff and the nurse concluded their discussion, Defendant Nolen opened the door for the Plaintiff to leave the medical area. [Id.]. Defendant Kim was not working and was not otherwise present in the medical area on March 5, 6, or 7, 2018. [Doc. 14-1 at ¶¶ 3, 4]. She was not involved in any of the Plaintiff's care. [Id. at ¶ 26].

In the event of a true medical emergency, the jail provides appropriate care. Emergency care in the jail follows similar triage priority as a hospital emergency room. Had Plaintiff presented

7

to a civilian emergency room with the complaint of blistered toes, he would have been placed in the lowest triage category and asked to wait in the waiting room. [Doc. 14-1 at ¶ 19]. Plaintiff's request for a band-aid on the morning of March 7 was not a medical emergency. Plaintiff failed to follow protocol by failing to fill out and presenting a sick call form, failing to wear his ID bracelet, and in attempting to seek care at a time designated from diabetic check. [Id. at 14-1 at ¶ 20].

As a result of Plaintiff's refusal to have his blood sugar checked and to receive insulin on the morning of March 7, 2018, Dr. Flitt ordered that Plaintiff be admitted to the medical bay area, which occurred around 4 p.m. that day. [Doc. 14-1 at ¶ 21; Doc. 27-2 at ¶ 18]. Plaintiff was to be monitored in the event he had a diabetic emergency in accordance with standard medical precaution. [Doc. 14-1 at ¶ 21]. At approximately 11:50 p.m., when Plaintiff was wearing his ID bracelet and after Plaintiff had filled out a sick call form, Plaintiff was examined by medical staff for his toe. His sick call request form stated: "My toe is bleeding, and I don't want to get it infected." [Doc. 14-1 at ¶ 22]. The examination showed that both big toes were wounded. His right toe had an old calloused, closed flat blister. On the bottom of his left toe, there was a burst blister. The blister was cleaned and dressed. [Doc. 14-1 at ¶ 22].

Had Plaintiff reported at either medical screening intake in December 2017 or March 2018 the existence of a wound, medical staff would have conducted a daily wound check. Plaintiff, however, made no such report. [Doc. 14-1 at ¶ 23]. Diabetic ulcers develop over time as a result of untreated wounds in patients with uncontrolled diabetes. Wearing standard issue prison shoes for one to three days will not cause diabetic ulcer. [Doc. 14-1 at ¶ 24].

Plaintiff remained in the medical bay area until he was released into the custody of the Department of Corrections the next morning on March 8, 2019, at 6:20 a.m. [Doc. 27-2 at ¶ 18].

On April 2, 2018, Defendant Cloninger received a certified letter from Plaintiff that was dated March 8 and 11, 2018, and mailed on March 25, 2018, asking for a policy change to accommodate his footwear. [Id. at ¶ 20 (citing Doc. 27-4)]. Defendant Cloninger has no recollection of receiving any other letters or communications of any kind from the Plaintiff other than the letter received on April 2, 2018. [Id. at ¶ 21]. Furthermore, there is no record that any letter from the Plaintiff dated December 6, 2017, was ever received at the jail or that Plaintiff filed any other grievances or complaints while he was housed there in December 2017 or in March 2018.

### 3. Video Evidence

The Court has carefully reviewed the video evidence submitted by Defendants Cloninger and Nolen in support of their summary judgment motion. The evidence consists of video footage of Plaintiff's interaction with Nurse Jane Doe and Defendant Nolen on the morning of March 7, 2019, taken from two angles in the medical bay. The video evidence corroborates the other evidence presented by Defendants in support of their summary judgment motion. Before the Plaintiff enters the medical bay, it appears another inmate is receiving an injection of what appears to be insulin without incident. When Plaintiff enters the medical bay, it is clear that he is not wearing his ID bracelet. He is present in the area for approximately two minutes, during which time he has a conversation with Nurse Jane Doe. He sits down in a chair next to her station and shows her his feet. His socks appear to have some amount of blood on the soles, but it is certainly not copious. Before the Plaintiff rises from his chair, Officer Nolen walks nonchalantly from where she is standing at the opposite side of the nurses' station to the door of the medical bay and opens it for the Plaintiff to leave. She stands there patiently waiting for the Plaintiff to exit the room. She does not touch her mace or take any sort of threatening or aggressive posture.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment.[2] Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an

---

[2] Because Plaintiff was a pre-trial detainee at all relevant times, his deliberate indifference claim is properly brought under the Fourteenth Amendment, rather than the Eighth Amendment, but the analysis is the same. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983); but see Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473, 2475 (2015) (holding that the test for excessive force claims brought by pre-trial detainees under the Fourteenth Amendment differs from the test for excessive force claims brought by convicted prisoners under the Eighth Amendment). This Court observes that even if the Fourth Circuit were to apply the Kingsley v. Hendrickson "objective unreasonableness" standard that currently applies to pre-trial detainees' excessive force claims to pre-trial detainees' deliberate indifference claims, the Plaintiff has still not presented sufficient evidence to withstand Defendant's summary judgment motion.

excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

### A. Defendant Kim

Defendant Kim was not involved in the relevant medical care. The Plaintiff concedes to having misidentified her as the "head nurse" working on the morning of March 7, 2018. As such, there remains no genuine issue of material fact relative to Defendant Kim's conduct in this case. Further, Plaintiff requests that summary judgment be granted in her favor. The Court, therefore, will grant Defendant Kim's motion for summary judgment.

### B. Defendant Cloninger

Plaintiff's claim for deliberate indifference against Defendant Cloninger centers on Defendant Cloninger's alleged failure to change the jail policy to allow diabetics to keep their personal footwear while housed at the jail after Plaintiff was there in December 2017 and before his return in March 2018. In support of this claim, Plaintiff alleges that Plaintiff sent Defendant

Cloninger a letter after his one-night incarceration in December 2017 asking Defendant Cloninger to change the policy and, when he returned in March 2018, the policy had not changed.

Even if the Plaintiff could rely on allegations in his pleadings alone to overcome the Defendants' evidence on summary judgment, the Plaintiff has not raised a genuine issue for trial here. Specifically, Plaintiff has failed to establish that Defendant Cloninger had the requisite state of mind to establish "deliberate indifference" under the law. Deliberate indifference describes a state of mind more blameworthy than negligence, requiring (1) that a defendant have been personally aware of facts from which the inference could be drawn that Plaintiff would suffer a substantial risk of serious harm; and (2) that the defendant had actually drawn the inference and recognized the existence of such a risk. <u>Farmer</u>, 511 U.S. 825, 837 (1994). Further, a prison official is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. <u>Id.</u> at 837.

Here, the Plaintiff's allegations fail to satisfy either of these elements as to Defendant Cloninger's state of mind. Defendant Cloninger attests that he never received the Plaintiff's December 2017 letter and was not aware of any special shoe considerations or request by the Plaintiff in December or in March. Further, there is no evidence that Defendant actually drew an inference (from facts of which he was unaware) and recognized the existence of a "substantial risk of serious harm" to the Plaintiff. Thus, Plaintiff has failed to raise a genuine issue as to Defendant Cloninger. Summary judgment for Defendant Cloninger is, therefore, appropriate.

### C. Unidentified Nurses

Plaintiff's claim for deliberate indifference as to the unidentified nurses involves the Plaintiff's interactions with these nurses on the morning of March 7, 2018. Plaintiff seeks to identify these nurses in furtherance of his claim. The Defendants' evidence, however, shows

unequivocally that the unidentified nurses were not deliberately indifferent to Plaintiff's medical needs. Plaintiff was advised of policy regarding medical care at the jail shortly on the day of his arrival on March 5, 2018. On the morning of March 7, 2018, Plaintiff presented to the medical bay for treatment of his toe, without having filled out the required sick call form and without wearing the required ID bracelet, during a time frame designated for blood sugar checks. Plaintiff refused to have his blood sugar level checked and demanded a band-aid for his toe. Plaintiff prevented the provision of any care by the unidentified nurses by refusing to follow jail policy. Plaintiff here expects treatment beyond that which is available and customarily provided to civilians seeking medical care in the community. The Plaintiff falls woefully short of even alleging that the treatment he received was so grossly incompetent and inadequate as to shock the conscience in support of an Eighth Amendment deliberate indifference claim. Further, even if Plaintiff's own actions had not precluded him from receiving the care he demanded, a nurse's refusal to provide a band-aid to a patient whose toe is bleeding does not support a claim under the Eighth Amendment.

In sum, for the reasons stated herein, any medical provider Plaintiff did or could have named in this suit is entitled to summary judgment on Plaintiff's deliberate indifference claim as to them.

As such, Plaintiff's motions to conduct discovery to identify the head nurse and Defendant Jane Doe and his motion to amend his Complaint to add them as Defendants will be denied as futile.

### D.     Defendant Nolen

With respect to Defendant Nolen, Plaintiff alleges that Defendant Nolen "got mad" at Plaintiff when Plaintiff asked for a band-aid and threatened the Plaintiff with mace. The Plaintiff's

Complaint survived initial review only as to a claim for deliberate indifferent to a serious medical need. The Plaintiff cannot survive summary judgment now based on a claim that was not allowed by the Court on initial review. Furthermore, the mere threat of mace, even if true, is insufficient to show the use of excessive force in any event. The Court, therefore, finds that Plaintiff has failed to raise a genuine factual dispute relative to Defendants' forecast of evidence as it related to Plaintiff's claim against Defendant Nolen.

## IV. CONCLUSION

In sum, for the reasons stated herein, the Court grants Defendant Kim's motion for summary judgment, grants Defendants Cloninger and Nolen's motion for summary judgment and denies Plaintiff's motions to conduct discovery and to amend his complaint to identify the two Defendant nurses named in his Complaint.

**IT IS, THEREFORE, ORDERED** that:

(1) Defendant Kim's Motion for Summary Judgment [Doc. 14] and Defendants Cloninger and Nolen's Motion for Summary Judgment [Doc. 27] are **GRANTED**, and this action is dismissed with prejudice.

(2) Plaintiff's Motion to Conduct Discovery [Doc. 24] is **DENIED**.

(3) Plaintiff's Motion to Amend Complaint [Doc. 30] is **DENIED**.

(4) Defendant Kim's Motion to Strike Plaintiff's Surreply [Doc. 25] is **DENIED** as moot.

(5) The Clerk is respectfully instructed to terminate this action.

Signed: August 26, 2019

Frank D. Whitney
Chief United States District Judge